## [No. 1277.]
### BRITTLE SILVER COMPANY v. RUST.

1. FOREIGN CORPORATION—PREFERENCE TO STATE CREDITOR.

To entitle a party to invoke the aid of Gen. Stats. 1883, sec. 260 (Mills' Ann. Stats. sec. 499) which provides that no foreign corporation shall mortgage or incumber its property in this state to the injury or exclusion of any citizen or corporation of the state, and that no incumbrance which the foreign corporation may execute to secure, any debt created in any other state, shall be operative as against citizens until all liabilities due to any citizen or corporation at the time such mortgage was recorded shall have been discharged, such party attempting to invoke the aid of said statute must bring himself plainly, clearly and unmistakably within its terms. To bring himself within the terms of this statute, the party invoking its aid, must show either that the mortgage was given to the exclusion or injury of a citizen of Colorado, or that the debt which the nonresident seeks to enforce was created out of the state and the citizen's debt must be then due.

2. SAME—ESTOPPEL.

Where a citizen of this state, a stockholder in a foreign corporation, entered into an agreement with nonresident stockholders of the same corporation and with the corporation, whereby the different stockholders agreed to advance money to the corporation to enable it to carry on its operations for the benefit of the stockholders, and permitted the company to execute its several notes to the different stockholders for the money advanced, one of which he takes, and to give a mortgage on all its property to secure the payment of these obligations, he may not be permitted to say that the security is invalid under sec. 260, Gen. Stats. 1883, and assert a preferential right as against the parties with whom he has agreed, and who on the faith of that agreement have advanced their money.

3. CONSTITUTIONAL QUESTION.

The constitutionality of sec. 260, Gen. Stats. 1883 (Mills' Ann. Stats. sec. 499), is questioned but not determined.

*Error to the District Court of Summit County.*

. Mr. ALBERT S. FROST, and Messrs. RIDDELL, STARKWEATHER & DIXON, for plaintiffs in error.

Messrs. CARPENTER & McBIRD, for defendant in error.

BISSELL, J., delivered the opinion of the court.

The character of the proof contained in the record very greatly enhances the material difficulties which environ this cause. The case was heard and determined on the pleadings and the admissions of counsel. The only testimony offered was that of the trustee and this relates generally to his redemption of the property from a tax sale and to services which he performed in the protection of the property and its subsequent sale. We are so strongly impressed with the conviction that it would be a gross injustice to uphold this judgment, and that it can be supported on no equitable consideration, even if on a legal basis it might under other circumstances be maintained, that we believe we have a right, as indeed the general rules permit, to construe the pleadings most strongly against the pleader, and to indulge in all reasonable inferences and legitimate presumptions in determining the force, effect, and character of the admissions which were made at the trial.

The Brittle Silver Company was a corporation, organized under the laws of Louisiana to operate some mining claims in Summit county, Colorado. We assume that this was the sole purpose of its creation because there is no evidence to show that it had any other object, or owned any other property. The allegations of the complaint are to the point that the company at the time of the recovery of the judgment hereinafter referred to, owned these mining claims, the mill

site, machinery, and other materials essential to the carrying on of mining operations. The circumstances of its organization are not set out or the time when it acquired its title. At some time in its history the company required capital to carry on its business, and either as an initial step in its purposes, or to continue the prosecution of work which had already been begun the company borrowed from Rust, the defendant in error, $5,212.04, from Bofinger, $4,832, from Hall, $5,009.84, and from Fenno, $2,935.36, amounting in all to $15,989.26. This money was loaned the company on the 10th of April, 1890. The corporation made its notes to these individuals in the respective sums named, and executed a trust deed on that date on all its property in Summit county to secure their payment. We shall assume for the purposes of this decision that the notes were delivered to the payees at the time the money was borrowed and the notes made, although there is an allegation in the complaint that Rust had no knowledge of the execution of these securities. This is not consistent with the other allegations in the pleading. It is very fully and generally set up in the complaint, both the original and the supplemental, that the company made its trust deed to Frost on the date named to secure the money advanced by the plaintiff, as well as to secure the advances made by the other defendants. It was also directly averred that the money advanced by Rust was secured by the deed of trust and he nowhere directly alleges that he never received the note, nor that it remained in the possession of the trustee or the company, and we must assume there was a delivery of the paper to the individuals who loaned the money. It is a fair inference from the pleading, and in the absence of a specific statement respecting the situs of the paper we have a right to assume it was delivered. The operations of the company were unsuccessful and it probably became insolvent owing these debts and owning that property. Bofinger, Hall and Fenno were citizens and residents of Louisiana. This circumstance led to the institution of a suit by Rust to secure the benefits of a statute respecting foreign corpora-

tious and foreign debts. The law has been on the statute books for many years, and, singular as it may appear, has never been the subject of construction by the courts. The plaintiff in error, to wit: the trustee, the nonresidents and the corporation attack its validity and constitutionality, contending that its provisions in their hostility to the enforcement of debts held by nonresidents and created without the state, and the preference which the statute attempts to give to citizens of Colorado in the enforcement of their claims as against debts which the corporation has attempted to secure the nonresident creditor, is inimical to the general constitutional provision which gives to the citizens of all states equal rights of property and equal power of contract. We do not intend to pass on this constitutional question because there are other bases on which we can support our conclusions, and we believe that the plaintiff has failed to make a case which brings him even within the letter of the statute, should it be held constitutional. The enactment is so strongly penal in its character, may work out such inequitable results and is so plainly inimical to the general interests of the state that we are clearly of the opinion that to entitle a party to invoke it, he must bring himself plainly, clearly and unmistakably within its terms. Without in any manner giving its details, the statute provides that no foreign corporation shall mortgage or incumber its property to the injury or exclusion of any citizen of the state, and that no incumbrance which the foreign corporation may execute to secure any debt created in any other state, shall be operative as against citizens until after all of its liabilities due to any resident citizen or corporation shall have been discharged. It is a very sweeping piece of legislation and attempts to take away from a corporation doing business within the state, under the permission and with the right conferred by our statute, the power to dispose of its property with the freedom and with the same right accorded to citizens and resident corporations. It will be observed, however, that there are two elements, one or the other of which

must exist, to enable a party to bring himself within its letter. The mortgage must be given to the exclusion or injury of a citizen of Colorado, or the debt which the nonresident seeks to enforce must have been created out of the state and the citizen's debt must be then due. Dismissing for the present any further consideration of the statute, we now recur to the situation of the parties as shown by the pleadings, the admission and history of the present suit, and the matter on which it is based. As has already been stated, these several parties, who were stockholders and directors in the company advanced these several sums to the corporation to enable it to prosecute its enterprise. We are not directly advised that these advances were measured or determined by the amount of their respective personal interests in the company, but it is a fair presumption that each person made his advance on some basis of that description. We are not advised whether there were any other stockholders in the company, but if there were they seem not to have been interested in the matter of this loan. The agreement was made between these four people Bofinger, Hall, Fenno and Rust, who mutually contracted with each other, and with the company to advance these different sums to enable the corporation to further do business or to commence and pursue the object of its incorporation. It is directly admitted by counsel that the advances were not individually made, but that the parties agreed among themselves to loan the several sums to the corporation. We regret that the terms, conditions and provisions of this contract were not the subject of either stipulation or proof. It would have been so simple and easy to establish what the contract was that we confess to a little surprise that counsel did not attempt to prove it. It was evidently not a matter which could have been disputed by Rust because his counsel admitted that the parties agreed to make these loans. We shall assume, however, that when the parties agreed to make them, the contract resulted in a mutual obligation on the part of each to carry it out. There is no suggestion of a neglect or failure

to do what had been agreed upon and we therefore assume the contract was fully and precisely executed. Under these circumstances, it must be taken that the agreement of one to advance was a sufficient agreement for the advance made by the other, and that the mutuality of the agreement and the mutuality of the preformance would, statute or no statute, give rise to mutual obligations, and a mutual right to enforce any remedy for the collection of the claims. This is a presumption and an inference which we regard as legitimately drawn from the admission, and as we said at the outset we shall indulge in such presumptions unless the plaintiff hereafter makes out a case which comes directly within the statute. These matters proceeded until about 1892, when the trustee, at the request of one or more of the parties, commenced to advertise the property for sale to enforce the payment of some of the notes. Whether this sale preceded Rust's action in the federal court we are unable to state, but it is unimportant. About that time Rust commenced a suit in the federal court against the nonresident corporation; in it he ignored the note, and brought suit for money loaned and advanced. He obtained judgment. Thereafter as nearly as we are able to determine from the record, he filed a bill in the federal court to restrain Frost from proceeding with the advertisement and sale of the property, and sought to charge his judgment as a lien which should be preferred to the lien of the trust deed. We are not able to state more definitely the drift and purpose of the suit because it is not set up in this proceeding. On the hearing that bill was dismissed and Rust took an appeal to the circuit court of appeals and while the cause was there pending he brought this suit whereby all these matters appeared, and sought a judgment that Frost should be enjoined from paying over any part of the proceeds of the sale until the determination of that appeal to the circuit court of appeals, that he should be decreed a trustee and directed to pay Rust the amount of his judgment, or in the alternative, if the appeal should be determined against him that he should be entitled to his *pro rata*

share of what might be derived from the sale of the property. In other words, he sought both to ignore the trust deed and to establish a preferred claim, but in the event of a failure he prayed relief that his rights under the security should be recognized and enforced to the extent of his *pro rata* share according to the terms of the original contract. The position was slightly inconsistent and we cannot very well see how he could insist that the trust deed was void as to him, and at the same time pray for the application of a part of its proceeds to the liquidation of his debt. The appeal in the circuit court of appeals was resolved against him for lack of jurisdiction of the federal court because the trustee, Frost, who was an indispensable party to the suit, was a citizen of Colorado. The dismissal of the bill in the lower court did not provide that it should be without prejudice. To avoid the effect of such a judgment an application was evidently made to the appellate tribunal to direct the dismissal to be without prejudice to preserve to him the right, if any, to maintain a similar suit in the state court. This was done and then he filed a supplemental complaint substantially like the first, but therein prayed, the sale having been in the mean time held, although the distribution of the proceeds was enjoined, that all of the proceeds of the sale be paid to him. He thus attempted to use the trust deed for his own benefit although he asserted its invalidity. There are many reasons why this judgment, which adjudged Rust's claim superior, to the claim of his cocreditors and which subjects the results of the sale under the trust deed to the payment of his judgment to the exclusion of the claims of Bofinger, Hall and Fenno, should be set aside. The statute provides that a trust deed shall be void which operates to the injury or exclusion of the resident creditor and only declares that it shall be void and inoperative as against debts due to citizens at the time the security is given. So far as we are able to discover neither one of these conditions existed, and it was obligatory on the plaintiff to establish one or the other. The company did not attempt to give a security which should either exclude the

resident creditor, or work injury to him, and the pleadings and proof absolutely negative any such intention. The security was executed to protect the note which the company gave him for his proportion of the advances. By the very terms of the deed he was put on an absolutely equal basis with the other and foreign creditors, and he was entitled in case of its enforcement to share with them in the distribution of the corporate assets. The case cannot be included within the scope of the other word "injury" which can only be taken to mean the deprivation of some legal right. How an equitable and fair distribution of the property of a corporation among creditors who have equal equities can be taken to be a legal injury, is not within our apprehension. The plaintiff has equally failed to bring his case within the other subdivisions of the section (General Statutes 1883, section 260), which enacts that no mortgage to secure a debt "created" in any other state shall take effect until all liabilities due to citizens of the state have been paid and extinguished. There is nothing to show that this debt represented by the notes executed to Bofinger, Hall and Fenno and secured by the trust deed was "created" outside of Colorado. The presumption is otherwise. The money was paid to the corporation presumably within the state because that was the situs of its operations, the only place in which it was engaged in the transaction of business, and since its apparently sole object was the development of mining properties in Summit county, Colorada, the money was probably paid here, and in the legal sense the debt was "created" within the state. It is possible the money may have been paid to some officer of the corporation in Louisiana and transmitted immediately to Colorado and spent here. Whether this fact if true, would make it a debt created without the state, and therefore, within the scope of the statute we need not speculate, but may content ourselves with saying that when a party desires to enforce a statute of this description, he must make proof which brings his case clearly within its terms. There is another technical suggestion which may perhaps be properly

invoked against Rust and we think that every intendment should be taken against him. There was no evidence that there was any debt due to Mr. Rust at the time the security was delivered. The note ran for some unknown period and the plaintiff has not shown that the note was due on demand, or at the date of execution of the trust deed, and if he saw fit to credit the corporation and accept its note and permitted a trust deed which secured it in common with other claims to be delivered by the company without protest, he could hardly have a right to insist that his note was due, which is the statutory requirement.

But above, beyond, and beside all this argument and analysis there is a fundamental proposition which must be absolutely destructive of the claim of the defendant in error unless he can take his case without its operation. This is the equitable consideration. When he entered into an agreement with other parties to advance money to a corporation in which he had an interest, to enable it to carry on its operations for his own and their common benefit, and permitted the company to execute its several notes, one of which he takes, and to give a trust deed on all of its property to secure the payment of these obligations, he may not be permitted to say that the security is invalid under this statute, and assert a preferential right as against the parties with whom he has agreed and who on the faith and strength of that agreement have advanced their money. What might be the situation if he was able to make proof that the agreement was not so broad or comprehensive in its scope, that there was nothing in the terms and conditions of it which would equitably estop him from asserting his preferential claim, we do not determine. We simply hold that on this record as it stands, with the admission that the money was advanced by all these parties under a common agreement to enable the company to carry on its work for their common benefit, he must abide the results of that convention and can take no part of the property of the company on any claim under the statute, but must equitably share with these other parties in the distri-

bution of the assets of the company.   We want nothing in this decision to be taken as an expression of our opinion of what the law might be, if the proof were different.   We simply hold that on the case as made, the plaintiff is not entitled to maintain his bill, and for the reasons given the judgment will be reversed.

*Reversed.*